Case No. 17-6238 William Thomas Jr v. John Schroer, et al. Argument not to exceed 10 minutes for appellant, 10 minutes for appellee, and 5 minutes for each arguing amicus. Mrs. Campbell, you may proceed with the appellant. May it please the Court, good morning. My name is Sarah Campbell and I represent the Commissioner of the Tennessee Department of Transportation. I would like to reserve two minutes for rebuttal. You may proceed. For more than 40 years, Tennessee has regulated billboards on areas adjacent to its interstates and primary highways while accepting from regulation on-premises signs, that is, signs that advertise activities conducted on the premises. Tennessee's Billboard Act is hardly unique. Every state in the country has a similar law and all are modeled after the Federal Highway Beautification Act. The central issue in this appeal is whether the on-premises exception, as applied to non-commercial speech, is a content-based regulation of speech that is subject to strict scrutiny under the First Amendment. This Court considered that question more than 30 years ago in Wheeler v. Commissioner of Highways and held that the on-premises exception is content neutral. The Supreme Court's recent decision in Reed v. Town of Gilbert does not require a different result. In fact, Justice Alito's concurring opinion in that decision, which was joined by two of the other justices in the majority, specifically identifies rules distinguishing between on-premises and off-premises signs as content neutral. Now the on-premises exception is content neutral under Reed because it does not single out a specific subject matter for differential treatment. I know you focused on the concurring opinion in your brief, but what did the majority opinion hold? Because we're not bound by the concurring opinion more than we are by the same opinion. That's correct, Your Honor. You believe it's illustrative? We do believe it's illustrative. It helps explain the majority opinion by identifying specific types of exceptions that are content neutral. Under the majority opinion in Reed, the on-premises exception is also content neutral. To the extent that Reed changed the law regarding content neutrality, what it did was clarify that a court can't skip over the first step of the content neutrality analysis, which is considering whether the regulation is content-based on its face. So that's the part of the analysis that the court clarified, that even if a regulation has a content-neutral justification, if it's content-based on its face, that content-neutral justification doesn't save it. This court in Wheeler, when it evaluated the Kentucky Billboard of Acts on-premises exception, didn't skip over that first step of the content neutrality analysis. It considered whether the exception was content-based on its face and concluded that it was not. Under the test for content neutrality under Reed, the question is whether the regulation singles out a specific subject matter for differential treatment. The on-premises exception does not, Your Honors. Any content may be displayed on an on-premises sign if it relates to some activity occurring at that location. Doesn't the very fact that there is a differentiation between off and on and the regulation talking about if the billboard addresses something that is on the premises, then it's covered by the exception. Doesn't that in and of itself make this not content-neutral? No, Your Honor. We don't believe that it does. And that's because there are myriad locations covered by the Billboard Act. And so the content must relate to the location where it's being displayed. But those locations and the activities being conducted on those locations are quite varied, such that there is no identifiable topic, identifiable subject matter, that is singled out for different treatment under the Act. And in comparison with cases, the Supreme Court's cases, like Boosby-Berry and Kerry v. Brown and Mosley, who may be helpful here, in those cases, the problem was that a discrete subject matter was singled out for different treatment. So although in those cases there was a locational component in that the regulation only applied in a particular area, in Boos, for example, within 500 feet of an embassy, but the problem was not that speech was prohibited or not in relationship to a particular location. It was that only certain subject matter was prohibited. And that's not what's going on here. Here, the exact same message may be displayed or may not be displayed depending on the location, not depending on the content of the sign. And we think that's the test for it. We believe that that's the proper test required under Reed. And Justice Alito's concurrence does make that clear, and specifically identifying the on-premises exception as a kind of rule that is content neutral under that first step of inquiry, which is whether it is content based on its face. Now, Plaintiff and his committee offer essentially three arguments as to why, in their view, the regulation is not content based, or is content based, excuse me. All of those reasons, though, are wrong, and I'll walk through them. First, they try to explain away Justice Alito's concurring opinion by speculating that he must have been talking about a different kind of on-premises exception. But respectively, we think that's just impossible. The Reed court was very familiar with the kind of on-premises exception that is at issue in this case, for a few reasons. First, this kind of on-premises exception has long been a feature of federal, state, and local sign regulation. The federal government filed an amicus brief in Reed, which specifically discussed the Federal Highway Beautification Act, and it had the same kind of on-premises exception. So that amicus brief was before the court, and Justice Kagan specifically cited the Federal Highway Beautification Act in her dissent. Furthermore, Justice Alito was on the panel, and the Third Circuit's decision in Rapa, which is considered Delaware's final line, which also had a similar on-premises exception. So we respectfully think it's just impossible that he was referring to any other on-premises exception other than one at issue here. Second, Plaintiff misconstrues Reed by saying that a regulation is content based if its application does require someone to look at the sign. That is not what Reed said. In three of this court's sister circuits, the First Circuit, the Ninth Circuit, and the D.C. Circuit, have specifically rejected that kind of strained interpretation of Reed. And here, reading the message on the sign would not be sufficient to determine whether the on-premises exception applies. You, of course, need to know what the relationship is between the message on the sign and the location where the sign is being displayed. So the test is not whether application of a regulation depends in part on its content, but whether it depends entirely on content. Well, but if you simply have to look at the message on the sign, doesn't that get into the content of the billboard? And it seems that they'll cut against your argument. Your Honor, to the extent you're concerned about enforcement discretion, that reading the sign may open up arguments about enforcement discretion that sometimes inform the content neutrality analysis, we don't think that the kind of cursory examination that would be required in the on-premises sign context implicates those concerns. And the alternative that plaintiff offers, distinguishing between commercial and non-commercial speech, we think would far more implicate those concerns, because determining whether something is commercial or non-commercial speech is a far more difficult exercise than simply looking at the sign to determine whether it relates to activities being conducted on the property. Plaintiff also argues that the exception is content-based because it privileges commercial speech over non-commercial speech. This argument, first of all, is incorrect as a factual matter. I want to go back just a moment. Yes, Your Honor. So if I owned a plot of land, let's say, I wish there was no commercial activity or anything else, no, just vacant land, but it is land I own, can I just put up whatever sign I want as long as it meets the location requirement under the statute? Is there a problem with that? Your Honor, if the message does not relate to anything happening on the property, you could put up a sign, a permanent sign, if it complies with the spacing and size and lighting requirements that are applicable to permanent signs. So then we would have to get into what is or is not a premises. Because I'm here, I've got my land, and I'm going to put up this billboard, and I'm going to put it up within whatever the location requirements are. And you're telling me now that I have to be concerned about the content of the sign. Well, only insofar as it would have to relate to something happening on the property. If nothing is happening on the property, then the only sort of sign that would be allowed in that case is a sign advertising that it's for sale or for lease or not for sale. Well, if nothing is happening on the land, I am getting revenue by putting up a sign. Yes, Your Honor. That wouldn't satisfy the on-premises exception. And the reason that that's different and the reason that on-premises signs are accepted, and I think this will help explain what kind of content we're looking for here, is that on-premises signs are accepted because the location of that sign has expressive importance in a way that the location of some other sign does not. So if you're putting up a message that doesn't relate to anything happening on the property, that message could be just as effectively communicated on any other sign at any other location. Why is that content? Your Honor, it's not content because it doesn't focus on putting a value on the message itself. It's putting a value on the expressive importance of the location of that communication. And the Supreme Court has repeatedly recognized that the location of certain types of communication is important and deserves protection in cases like City of Lidu and Landmark. That when there is no alternative means of communicating that information as effectively, an exception may actually be constitutionally required. Let me just ask one more quick question here. So under your argument, we would never need to get to the state's compelling interest, the aesthetics, and how we say the art is. Is that correct? That's correct, Your Honor. And I see that my time has expired. Thank you. Thank you, Justice. May it please the Court. Lindsay Powell for the United States. As counsel already mentioned, Green did not report to change the test for what it means for a law to be content-based on its base. It did clarify that that's necessary for some of the inquiry before you move on, whether there's a content-neutral justification. But the question about whether something is content-based is not itself a new question, and the Court didn't report to upend well-established doctrines in this area, including the Wheeler decision. I think it's helpful in talking about what we mean for something to be content-based to consider the related question of viewpoint neutrality. So viewpoint neutrality, of course, the government can't favor one side of a debate. And then stepping back from that, what we mean with content neutrality is that the government can't favor or disfavor a particular debate. So it really gets to whether there is a topic or a subject matter that is being elevated or disfavored in relation to others, and that's not what we have in this case. You can speak on any subject whatsoever, as long as it has the necessary relationship to the place in which that speech is being undertaken. And that relationship requirement is emphatically unlike the exceptions that were at issue in Reed, which the Court did find to be content-based on their base because they were specific to particular categories of speech, particular subject matters, ideological, political, or event-based, that those were treated differently according to the particular topic. And that difference underscores why the concurrence that we've been talking about, which was joined by a full half of the justices in the majority in that case, is consistent with the Reed majority itself. And the two, of course, need to be read in harmony. So the concurrence says that this particular type of law, and we know that they were talking about this type of on-premises exception from the discussions elsewhere in the case of the Highway Beautification Act itself, from Justice Alito's participation in the RAPID decision. And the concurrence also calls out certain types of event-related signs. And again, with those, you would need to look at the sign to know how it was being regulated. And yet the concurrence says that in and of itself, the need to look at a sign is not enough to turn it into something that is content-based and subject to strict scrutiny. And the courts of appeals have continued to hold that sense, Reed. You have decisions from the First, Ninth, and D.C. circuits very recently in which cert was denied, in which they said the mere fact that you have to consider what is being said to know how the sign is regulated does not itself determine whether it is content-based. So here, where you have a provision that doesn't single out any particular topic or subject matter for favored treatment, where it turns on the relationship between what is being said on any subject whatsoever and the place where it's being said, it's content-neutral. So for clarification, when we're conducting a content-based inquiry, does Reed require a regulation to be entirely content-related in order to find it content-based? Yes, Your Honor, that is how the court described the exceptions in that case, and I think that will generally be true. But even if it were possible to conceive of some example where something was content-based, even where you were taking another factor into account, that's not what we have here. Here, again, the exception does not distinguish among topics or subject matters but treats them all equally, turning instead on how they relate to the place where they're being displayed. And that relationship requirement makes perfect sense. Turning briefly to the tailoring analysis, of course we know from Mueller that laws of this type withstand intermediate scrutiny, but they withstand even strict scrutiny. The Billboard Act itself, by prohibiting signs along highways in general, furthers the government's substantial interest in highway safety. And by substantial, I mean compelling. There can be no question that the government's interest in protecting life and limb is of the highest order. It hasn't come up very often in First Amendment cases. The particular question of whether that interest is compelling or substantial, but other cases in other areas of the law from which it's appropriate to draw, make that very clear. And there really can be no doubt as to the importance of that interest. There's also little doubt that reducing clutter, reducing distraction along the highways, furthers that interest. And then the exception that we're talking about here is further consistent with it. It allows a narrow additional swath of speech, so it does not undermine that important interest that the general prohibition is furthering. And it, in fact, further supports that interest by helping motorists identify their surroundings, know what it is that they're passing as they drive, where they can find necessary services. And of course, as the State has discussed, the exception is also necessary to protect the expressive interests of property owners who have no other adequate means of engaging in the type of speech that the on-premises exception protects. I do, may I very briefly make one point? You may. With respect to Railway Express Agency, which is mentioned in the amicus brief for the First Amendment project on the other side, that actually underscores the long-standing pedigree of this type of scheme. So in that case, the rule that was at issue allowed advertisements on the sides of trucks as long as they related to the business in which the truck was engaged. So you had to have that relationship between the business and the speech being engaged in. It wasn't that the driver of the truck or the owner of the truck could engage in any speech just because it was their truck. It had to relate to the business at issue. And the Court, back in 1949, upheld that law. Thank you. Thank you. May it please the Court. In Reed v. Town of Gilbert, the Supreme Court held that regardless of additional factors, a statute that discriminates on the basis of content is subject to strict scrutiny. We're here today because the state of Tennessee discriminates, treats certain messages different than others. Because of that, the Bill of Rights Act has to meet strict scrutiny. The state has asserted on appeal three ephemeral and unsupportable interests, none of which have ever been accepted by any court, which have, in fact, been rejected by several courts, and which it failed to sustain in a full trial. And even if the state had demonstrated that its interests were compelling, it failed to demonstrate, again, in that full trial, that any of those interests were narrowly, that the regulation was narrowly tailored to any of those interests. For these reasons, we ask that the Court affirm the District Court's opinion. Going to several of the things that the state has said, first of all, addressing Justice Alito's concurring opinion. It's important to recognize this isn't a Marx versus United States situation. And the dispute here regarding Justice Alito's opinion is whether to interpret his concurrence in a narrow way, a way that's, in fact, consistent with the majority opinion, or in a broad way that conflicts with the majority opinion. Justice Alito made the conscious decision to join in the majority decision, not just to concur in the judgment. And we believe that courts should respect his decision by adopting the interpretation of his concurrence that fits with the plain meaning of the majority decision. And we can see that plain meaning by looking at the Reid decision, especially looking at how radical the decision really was. If you look at the final paragraph of the majority decision, they go through things that, before this opinion, we wouldn't have thought were content-based. But they imply, they let us know that warning signs marking hazards on private property, signs directing traffic like stop signs, even street numbers could be content-based signs. But they go on to say that those signs could meet strict scrutiny. Here, we had a full trial, and the state did not demonstrate that they could meet strict scrutiny. So, let's have an example. Let's look at a stop sign. A location-based requirement, for example, the on-premise-based requirement, would be the requirement that said, you cannot have any signs at an intersection. But then if you go on and say except for stop signs, that would be a content-based distinction. The court here said that that content-based distinction would likely pass strict scrutiny. And we agree, that would probably pass strict scrutiny on a summary judgment before a district court. Here, however, we didn't have anything of that type. And you can see even more with the examples that we cited in our briefing. For example, Booth's versus Berry. There, there was most definitely a location-based requirement. The law said that you couldn't have any signs within 500 feet of an embassy. But it then went on to say that only if those signs were critical of the foreign government. That was a content-based step. And the court, looking at that, said, you know, we ignore the location-based requirement. Its exact words were, looking at this line, looking at this law, it depends entirely upon whether their picket signs are critical of the foreign government or not. That shows that even when there is a location-based component, if you make that second step, if you go forward to making the content-based distinction, that is what's determinative. That is, in the court's judgment, it focuses entirely on that content-based distinction. So if we look at cases like Booth's, Cary, and Mosley, and so on, that have these location-based requirements, but then make the second step of going to content-based, those are content-based laws that have to meet strict scrutiny. And here, the state has had its opportunity to show that the interests were compelling. It is not. And in fact, it hasn't made a showing that its interests are narrowly tailored to that. Just to show how easy it would have been to prove it, as we showed, the 11th Circuit, for 20 years, since Southlake, has allowed non-commercial signs in wherever commercial signs are allowed. And even though for 20 years, since 1997, those non-commercial signs have been allowed, there was no evidence that there has been an explosion of non-commercial signs. There's been no evidence of increases in accidents. There's been no evidence due to non-commercial signs. And there's no evidence that there's a greater blind. You said that the aesthetics of the highway safety were not compelling interests. Is that a case-specific determination, or is there some case somewhere that is ill that a highway safety and aesthetics in these cases can never be a compelling state interest? Well, we noted in our brief that there have been circuit courts that have said that they're not compelling interests. And it's telling that in Metro Media, the court could have held that they were compelling interests, and that would have solved the case there. The court could have held that they were compelling interests in Reed, and that would have solved the case there. The Supreme Court could have, but it didn't. But we believe that just like with stop signs, if the court, if we had a trial, it definitely would be possible to show, if there were proof, that the safety interests that are issued here... I mean, stop signs, we know if you don't have stop signs, cars are going to be crashing into one another, or pedestrians are going to be run over. We have to focus on the safety interests that are at issue in this case. We also can't say that sometimes the court has referred to national security as a safety interest. The Supreme Court said, for example, in Republican Party versus White, that the government can't be vague about what it means by the compelling interest. There has to be clarity there so that we know exactly what it's being narrowly tailored to. And so here, we can't just broadly say safety interests. The state has to be careful about what it is saying is the safety interest, and how we narrowly tailor to that. You know, so as a practical matter, wouldn't the state be challenged to present evidence that showed that there were more traffic accidents, fatalities as a result of signage? It's not like stop signs, people are, you know, that's the reason for the accident here. The reason along that whole stretch of highway would be a number of things. And how does the state actually present evidence that would support that? Well, one way to do that would be statistically to look at locations where non-commercial signs are allowed and locations where they're not. It's making efforts to get more signs in one spot and not in another. And the emphasis is that there are more accidents where the signs are than... Not necessarily inferences, but statistical analyses would be able to look at the variables that were involved. And one of the variables involved would be whether or not there were non-commercial signs. And you'd be able to look at the T-statistics and so on to show that. There'd be lots of other variables, though. Yeah. But hopefully the T-statistic for that particular variable would show whether or not it was significant. And that it should be possible, since Texas now allows... Has changed its law and just wants to read, and Indianapolis has. As I said, the 11th Circuit has allowed this for years. So in a court hearing, they would be able to show that. Here, they did not, and the district court noted that. All they showed was that there had been an increase in accidents due to distracted driving even when the Billboard Act was in place. Unless there are any further questions, I'll observe them. Okay, thank you. Thank you. Thank you very much, Your Honor. This is Eugene Pollack with the U.P. First Amendment Project and the Center for the First Amendment. So to turn to a matter that Judge Donovan raised. You mentioned that there is a piece of unapproved land. Some signs are allowed. For sale and for lease signs are expressly allowed under the statute. Presumably as an application of broader principles of on-premises and off-premises distinction. Any other sign is not. That is a distinction based on content. Or let's say, for example, there is a business that's involved in some contentious political debates. For example, you might mention an abortion clinic. Would it be allowed to have a sign that says this is an abortion clinic? Presumably it would be allowed to have a political sign saying keep abortion safe and legal. Would it be allowed to have a sign saying vote for some candidate when the candidate is known as being pro-choice? That would require the government to make decisions about whether that's related enough or not. Inherently content-based decisions because one kind of sign would be allowed. That is to say, one kind of content would be that seems sufficiently related. Another would not. That implicates quite sharply the point that the Supreme Court majority made in McCollum v. Coakley that an act would be content-based if it required enforcement authorities to examine the content of the message that is conveyed to determine whether the violation has occurred. One reason that's an important point is precisely that it does implicate concerns about governmental discretion in choosing what's, for example, related and what's not. That is also a point that was anticipated by this court sitting in Bank in 2007 in the Peyton v. Furch case where the court said that the Supreme Court has made clear that any regulation that requires a reference to the content of speech to determine its applicability is inherently content-based. So for those reasons, under Reid and under McCollum, it's content-based. Another piece of evidence for this is from the Reid majority opinion which talks about how content discriminations are presumptively unconstitutional even when they're more subtle. For example, defining regulated speech by its function. Even if one doesn't view the on-premises, off-premises distinction as being a subject matter distinction. And even setting aside the foresay or forelease distinction, which is expressly content-based, the distinction between on-premises and off-premises signs is a distinction based on the function of the sign. If the function of the sign is to promote activity related to what is happening on-premises, then in that case it is allowed. If it's not, then it's not allowed. Moreover, unsurprisingly, this facial content discrimination ends up affecting different kinds of content quite differently. So for example, I haven't done a census, but I imagine in Tennessee there are quite a few shooting ranges and gun stores. And there are places where people could speak out in favor of gun rights because presumably you protect the Second Amendment that would be related to what's going on on-premises. Criticism of the Second Amendment or for gun control might be allowed only in much fewer places, perhaps only those advocacy groups that specialize in promoting gun controls. And other kinds of things, such as China out of Tibet, it may be there's virtually no place near a highway in Tennessee where that is sufficiently related to the use of the property. So the facial discrimination based on content ends up having an important practical effect as well. Your Honor, you also asked whether it requires a regulation to be entirely content-based. And I think Counsel for Eveline pointed out that there are quite a few precedents that apply the content discrimination or the strict scrutiny test to things which are based partly on content and partly on location. And that's necessarily so. Very few regulations end up focusing only on content. You could have, say, a regulation that limits loud speech about politics. That's not solely content-based. Likewise, the law in Kerry v. Brown that limited residential picking but added an exception for labor speech. That's not solely content-based. But the presence of the content discrimination makes it content discriminatory. Even the law in Reed wasn't solely content-based. After all, it only applied to size, for example, of a particular size. A small sign would be unregulated regardless of content. And yet the presence of the content discrimination was sufficient to make it presumptive and constitutional subject to strict scrutiny. Your Honor, are there any further questions? Okay. Thank you. Just a few points in rebuttal, Your Honors. I'd like to start with the content-based inquiry. Planoff and Amici suggest that this is content-based because it has the effect of privileging commercial speech over non-commercial speech. First, as a factual matter, it applies equally to both commercial speech and non-commercial speech. And that even-handed application was sufficient for this court in Wheeler, and it was sufficient for the Supreme Court in Metro Media. That was a problem with the ordinance. Metro Media said it did not do that. Now, merely having the incidental effect of privileging commercial speech over non-commercial speech is not enough. Even if that's what were happening here and we have no empirical evidence to suggest that that's the case, the Supreme Court said in McClellan a facially neutral law does not become content-based simply because it may disproportionately affect speech on different topics. So the fact that this may have an incidental effect that burdened more non-commercial speech, then commercial does not render it content-based. Just a couple of other points. The ordinances at issue in cases like Boos and Carey may have turned in part on location, but the problem was that the distinction, the way in which speech was treated differently, turned entirely on content. And again, that's not what we have here. A more analogous situation would be if the regulation at issue in Boos prohibited, applied to all speech within a certain distance of an embassy, but turned on the relationship of the speech with the embassy. Now, that would also not necessarily be content-neutral because it applied only to embassies. Here, the locations that are regulated are varied. It could be anything that occurs alongside of a highway. And as a result, the speech that is allowed or not allowed under the on-premises exception is also varied, such that there is no discrete subject matter that is singled out for differential treatment. And that is why it is content-neutral. And briefly to address trick scrutiny, the state did support its compelling interests with ample evidence. And the Supreme Court has, let me just finish the point. Chief Judge Pohl, let's see, my time is up. Very quickly. Sure. Yes, Your Honor. The Supreme Court has frequently relied as well on a legislative consensus to support compelling interests. And we respectfully ask that this court reverse the district court. Thank you, Your Honor. Okay, well, thank you, counsel. We will take the December submission, and you may call the next case.